Electronically Filed: December 18, 2020

**ANDERSEN LAW FIRM, LTD.**
Ryan A. Andersen, Esq.
Nevada Bar No. 12321
Email: *ryan@vegaslawfirm.legal*
3199 E Warm Springs Rd, Ste 400
Las Vegas, Nevada 89120
Phone: 702-522-1992
Fax:    702-825-2824

**LEXINT LAW GROUP, APLC**
Robert C. Hsu, Esq.
*Admitted Pro Hac Vice*
Email: *robert@lexintlaw.com*
13300 Crossroads Parkway North, Suite 100
City of Industry, California 91746
Phone: (626) 286-7055
Fax: (562) 999-3321

*Counsel for Plaintiff*

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re:<br><br>EACHPOLE, INC.,<br><br>Debtor. | Case No. 20-10956-ABL<br>Chapter 7 |
| LINCO INC., as the Successor-In-Interest of the Bankruptcy Estates of EACHPOLE, INC., and TOP LIGHTING CORPORATION, dba ETOP LIGHTING CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>BEAUTY MEMORY, a Nevada Nonprofit Corporation; LKIMMY INC., a Nevada Corporation; SYNGURU CORPORATION, a Nevada Corporation; CHRIS KIM, an individual; HYUNJUNE KIM, an individual; IL KIM, an individual; MISOOK KIM, an individual; HYUKJOON KWON, also known as, ANDREW KWON, an individual; BHASKER PANCHAL, an individual DOES I through X, inclusive; and ROE ENTITIES XI through XX, inclusive,<br><br>Defendants. | Adversary No. 20-01130-ABL<br><br>**FIRST AMENDED COMPLAINT** |

1    By this First Amended Complaint ("Complaint"), as may be amended, Linco, Inc. ("Plaintiff"),

2   in its capacity as the successor-in-interest of the bankruptcy estates of EACHPOLE, INC ("Debtor EP"),

3   and TOP LIGHTING CORPORATION dba ETOP LIGHTING CORPORATION ("Debtor TLC")

4   ("Debtor TLC") (collectively, Debtor TLC together with Debtor EP herein are referred to as "Debtors");

5   complains against Defendants BEAUTY MEMORY ("BEAUTY"); LKIMMY INC. ("KIMMY");

6   SYNGURU CORPORATION ("SYNGURU"); CHRIS KIM ("CHRIS"); HYUNJUNE KIM

7   ("HYUNJUNE"); IL KIM ("KIM"); MISOOK KIM ("MISOOK"); HYUKJOON KWON, also known

8   as, ANDREW KWON ("KWON"), and BHASKER PANCHAL ("PANCHAL")(collectively, herein

9   referred to as "Defendants").

10    In support of this Complaint, Plaintiff alleges as follows:[1]

11                         **I. Jurisdiction and Venue**

12    1.    Plaintiff hereby incorporates by reference each of the preceding paragraphs of this

13   Complaint as if set forth fully herein.

14    2.    On October 8, 2019 ("TLC Petition Date"), Debtor TLC commenced its chapter 7 case

15   by filing a voluntary petition for relief under chapter 7 of the Bankruptcy Code, as Case No. 19-16516-

16   BTB ("TLC Case").

17    3.    The chapter 7 trustee in the TLC Case is Lenard Schwartzer ("Trustee Schwartzer").

18    4.    On February 20, 2020 ("EP Petition Date"), Debtor EP commenced its chapter 7 case by

19   filing a voluntary petition for relief under chapter 7 of the Bankruptcy Code, as Case No. 20-10956-ABL

20   ("EP Case").

21    5.    The chapter 7 trustee in the EP Case is Troy S. Fox ("Trustee Fox").

22    6.    On August 3, 2020, Plaintiff acquired all litigation claims from Trustee Fox by Court

23   order entered in the EP Case.

24

25    [1] When used herein, all references to "ECF No." are to the numbers assigned to the documents
filed in the case as they appear on the docket in TLC's main bankruptcy case (19-16516-BTB) or Debtor

26   EP's main bankruptcy case (20-10956-ABL), as specified. All references to "Section" are to the
provisions of the Bankruptcy Code, 11 U.S.C. §§ 101-1532. All references to "FRBP" are to the Federal

27   Rules of Bankruptcy Procedure. All references to "LR" are to the Local Rules of Bankruptcy Practice
for the United States District Court for the District of Nevada.

ANDERSEN
— L A W   F I R M —
—LTD—

7. On August 28, 2020, Plaintiff acquired all litigation claims from Trustee Schwartzer by Court order entered in the TLC Case.

8. This proceeding is brought pursuant to FRBP 7001.

9. This Court has jurisdiction over this Complaint pursuant to 28 U.S.C. §§ 157, 1334 and 2201.

10. Venue is proper in this Court, including venue pursuant to 28 U.S.C. §§ 1408 and 1409, because, among other things, this is the district in which the EP Case is pending. Pursuant to 28 U.S.C. § 1391, venue is also appropriate as Defendants are authorized to and regularly carry out substantial business in this district and the acts and conduct complained of herein took place within this district. Accordingly, this Court also has personal jurisdiction over the Defendants.

11. Plaintiff consents to the entry of final orders or judgment by the bankruptcy court if it is determined that the bankruptcy court, absent consent of the parties, cannot enter final orders or judgment consistent with Article III of the United States Constitution.

## II. Nature of this Action

12. As part of a scheme to transfer assets beyond the reach of creditors, KIM divested Debtor TLC of its assets ("TLC Assets")[2] and Debtor EP of its assets ("EP Assets")[3], primarily by making fraudulent transfers to KIMMY, SYNGURU, and/or BEAUTY, among others entities.

13. On information and belief, KIM owns 100% of Debtor TLC, Debtor EP, KIMMY, SYNGURU, and BEAUTY.

14. Debtors, KIMMY, SYNGURU, and/or BEAUTY share warehouses, operations, and employees.

15. At all relevant times, Debtors, KIMMY, SYNGURU, and BEAUTY are or were associated with the following addresses:

a. 2872 Vigilante Court, North Las Vegas, Nevada 89081;

---

[2] The term "TLC Assets" shall refer to inventory, equipment, accounts receivables that Debtor TLC has an interest or right in.

[3] The term "EP Assets" shall refer to inventory, equipment, accounts receivables, and is inclusive of "Amazon IDs" as defined herein, that Debtor EP has an interest or right in.

b.     7145 Bocaire Drive, Las Vegas, Nevada 89131;

c.     5840 North Donovan Way, Suite 101, Las Vegas, Nevada 89115 ("Donovan Warehouse");[4]

d.     4210 North Lamb, Suite 120, Las Vegas, Nevada 89115 ("Lamb Warehouse");

e.     10572 Acacia Street, Suite C-5, Rancho Cucamonga, California 91730[5] ("Acacia Warehouse"); and

f.     9955 6th, Unit A, Rancho Cucamonga, California 91730.

16.     Importantly, at the direction of KIM, Debtors have made intracompany asset transfers to KIMMY, SYNGURU, and BEAUTY, among others.

17.     Debtors are currently in bankruptcy, while KIMMY, SYNGURU, and BEAUTY remain outside of bankruptcy.

18.     As KIM intended, the result is that KIM and KIMMY, among others, continues to utilize and benefit from the Debtors' assets, while Debtors retain the associated debts and liabilities.

### III. Parties

19.     Linco[6] is a California corporation that holds patent rights in a popular light handle used in professional photography equipment.

20.     Plaintiff acquired all litigation claims from Trustees Fox and Schwartzer by entry of Court orders in the EP Case on August 3, 2020, at ECF No. 47, and, in the TLC Case on August 28, 2020. ECF No. 140.

21.     At all times relevant to this case, Debtor EP is and was a California corporation and is licensed to do business in the States of California and Nevada.

22.     At all times relevant to this case, Debtor TLC is and was a California corporation and is licensed to do business in the States of California and Nevada.

---

[4] On information and belief, it appears that Debtors and KIMMY all store their inventory at the Acacia Warehouse, Donovan Warehouse, and Lamb Warehouse.

[5] In fact, Debtor TLC lists the Acacia Warehouse as its address in its bankruptcy schedules and petition signed under penalty of perjury.

[6] Linco is used to refer to Linco, Inc. in its capacity as a judgment creditor of Debtor TLC. Plaintiff is used to refer to Linco, Inc., in its capacity as the successor-in-interest of Debtor EP and Debtor TLC's bankruptcy estates.

23.     On information and belief, Debtors were and are engaged in the business of importing photography lighting equipment materials from China to the United States to market and sell on various online selling platforms, including but not limited to Amazon and eBay, during all times material hereto.

24.     On information and belief, KIM is an individual residing in Clark County in the State of Nevada. On information and belief, at all relevant times alleged herein, KIM controlled and directed Debtors, KIMMY, BEAUTY, and SYNGURU and served as its officer and/or manager. On information and belief, at all relevant times alleged herein, KIM is the husband of MISOOK. KIM and MISOOK are the parents of their adult son, CHRIS. KIM is an insider within the meaning of 11 U.S.C. § 101(31) of both Debtors.

25.     On information and belief, MISOOK is an individual residing in Clark County in the State of Nevada. On information and belief, at all relevant times alleged herein, MISOOK was and is a member of the board for Debtor EP, BEAUTY and SYNGURU. As noted, at all relevant times alleged herein, MISOOK is the wife of KIM, and MISOOK and KIM are the parents of their adult son, CHRIS. MISOOK is an insider within the meaning of 11 U.S.C. § 101(31) of both Debtors.

26.     On information and belief, CHRIS is an individual residing in Los Angeles County in the State of California. Plaintiff is further informed and believes that CHRIS is and was an officer or board member of Debtor EP at all relevant times alleged herein. On information and belief, CHRIS is the adult son of KIM and MISOOK. CHRIS is an insider within the meaning of 11 U.S.C. § 101(31) of both Debtors.

27.     On information and belief, KWON is an individual residing in San Bernardino County in the State of California. Plaintiff is further informed and believes that KWON was and is a member of the board for Debtor TLC all relevant times alleged herein.  KWON was or is the vice president of Debtor TLC and was or is responsible for its operations.  KWON is an insider within the meaning of 11 U.S.C. § 101(31) of Debtor TLC.

28.     On information and belief, PANCHAL is an individual residing in Los Angeles County in the State of California. At all times relevant to this case, PANCHAL is and was a board member of both Debtors, and SYNGURU.  PANCHAL is the Chief Financial Officer of Debtor TLC, a role he has

1  held since at least May of 2016.  PANCHAL is an insider within the meaning of 11 U.S.C. § 101(31) of

2  both Debtor TLC.

3       29.     On information and belief, HYUNJUNE is an individual residing in Clark County in the

4  State of Nevada. On information and belief, KIM, through HYUNJUNE, formed KIMMY on or about

5  October 19, 2018. On information and belief, HYUNJUNE is related to KIM. HYUNJUNE is an insider

6  within the meaning of 11 U.S.C. § 101(31) of both Debtors.

7       30.     On information and belief, KIMMY is a Nevada corporation, at all times relevant hereto,

8  was and is licensed to do business in the State of Nevada, registered to conduct business in the State of

9  California, with its principal place of business located in California.  KIMMY is an insider within the

10  meaning of 11 U.S.C. § 101(31) of both Debtors.

11       31.     On information and belief, BEAUTY is a Nevada nonprofit Corporation, at all times

12  relevant hereto, was and is licensed to do business in the State of Nevada, with its principal place of

13  business located in Nevada.  BEAUTY is an insider within the meaning of 11 U.S.C. § 101(31) of both

14  Debtors.

15       32.     On information and belief, SYNGURU is a Nevada corporation, at all times relevant

16  hereto, was and is licensed to do business in the State of Nevada, registered to conduct business in the

17  State of California, with its principal place of business located in California.  SYNGURU is an insider

18  within the meaning of 11 U.S.C. § 101(31) of both Debtors.

19       33.     The true names and capacities, whether individual, corporate, association, or otherwise,

20  of DOE DEFENDANTS I through X, inclusive, are unknown to Plaintiff, who therefore sue such

21  Defendants by these fictitious names. Plaintiff is informed and believes that each of these Defendants

22  are responsible in some manner for the events and happenings referred to, and in some manner caused

23  the injuries and damages proximately thereby to Plaintiff as alleged herein. Plaintiff will seek leave of

24  this Court to amend it Complaint to insert true names and capacities when such Defendants have been

25  ascertained to join such Defendants in this action.

26       34.     The true names and capacities of ROE CORPORATIONS XI through XX, inclusive, are

27  unknown to Plaintiff, who therefore sue such Defendants by these fictitious names. Plaintiff is informed

1    and believes that each of these Defendants are responsible in some manner for the events and happenings

2    referred to, and damages caused thereby to Plaintiff as alleged herein. Plaintiff will seek leave of this

3    Court to amend its Complaint to insert true names and capacities when such Defendants have been

4    ascertained to join such Defendants in this action.

5                                        **IV. General Allegations**

6              35.    Plaintiff hereby incorporates by reference each of the preceding paragraphs of this

7    Complaint as if set forth fully herein.

8                                        *A.  Patent Litigation*

9              36.    On August 5, 2015, in an attempt to supplant Linco's patent rights, Debtor TLC filed a

10   preemptive action against Linco, initiating the Patent Litigation.[7] Linco filed counterclaims against

11   Debtor TLC for Debtor TLC's blatant infringement of Linco's design patents. As the Patent Litigation

12   developed, it became clear Linco would obtain a substantial judgment against Debtor TLC. At this

13   realization, Debtor TLC relentlessly began deploying a variety of tactics to delay the trial in the Patent

14   Litigation, including substituting lead counsel on the eve of trial and filing for bankruptcy relief to invoke

15   the automatic stay and stave off the entry of judgment in the Patent Litigation, among others.

16             37.    It would later be revealed the tactics Debtor TLC deployed were intended to, and indeed

17   did, accomplish the nefarious ends of delaying the entry of a judgment against Debtor TLC, buying time

18   so that KIM could quietly transfer Debtor TLC's most valuable assets to and from other corporate shells

19   formed at the direction of KIM, Debtor EP and KIMMY, among others.

20             38.    In May of 2019, during the Patent Litigation, KWON and KIM both testified that Debtor

21   TLC was financially healthy, testifying that Debtor TLC is one of the largest retailers of photography

22   lighting equipment.

23             39.    Despite this testimony, a mere six (6) months later, on October 8, 2019, Debtor TLC filed

24   its bankruptcy petition in Nevada.

25

26   ─────────────────

27        [7] The Patent Litigation that led to Linco's judgment against Debtor TLC is entitled *Top Lighting Corporation v. Linco*, Case No., 15-01589-JVS-KKx, brought in the District Court for the Central District of California ("Patent Litigation").

40.     On January 9, 2020, Linco obtained relief from the automatic stay in the TLC Case to proceed in the Patent Litigation until a judgment was entered.

41.     On January 21, 2020, after a jury trial in the Patent Litigation and hearings on post-trial motions enhancing damages, a judgment was entered against Debtor TLC, and in favor of Linco, in the amount of $991,028.79, plus post-judgment interest accruing at a rate of 1.56% until fully satisfied.

*B.   Fraudulent Transfer Scheme*

42.     Starting in 2017, in the midst of the Patent Litigation, KIM, acting in concert with and through the assistance of each of the Defendants, began his fraudulent scheme to transfer assets beyond the reach of creditors by directing Debtor TLC to transfer its assets to and from KIMMY and Debtor EP, among others.

1. Transfer 1: Debtor TLC v. KIM and MISOOK

43.     On information and belief, between January 3, 2018 and December 20, 2018, at KIM's direction, Debtor TLC paid $1,015,000.00 for KIM and MISOOK's personal taxes from Debtor TLC's Bank of America ("BofA") corporate bank account ending 5743 ("TLC Corporate Bank Account 1").

2. Transfer 2: Debtor TLC v. KIM

44.     On information and belief, between January 3, 2018 and May 23, 2019, at the direction of KIM, Debtor TLC paid some portion of $228,984.93 to KIM's personal BofA credit card, using funds from the TLC Corporate Bank Account 1.

3. Transfer 3: Debtor TLC v. KIM

45.     On information and belief, between January 10, 2018 and July 26, 2019, at the direction of KIM, Debtor TLC paid some portion of $629,292.83 to KIM's personal credit card, using funds from Debtor TLC's BofA corporate bank account ending 8850 ("TLC Corporate Bank Account 2").

4. Transfer 4: Debtor TLC v. KIM

46.     On information and belief, between December 14, 2018 and July 9, 2019, at the direction of KIM, Debtor TLC paid some portion of $117,034.44 to KIM's personal Chase credit card ending 6110 from TLC Corporate Bank Account 2.

5. Transfer 5: Debtor TLC v. Chinese Entities (Roe Corporations)

47.     Between December 2018 and June 2019, at the direction of KIM, Debtor TLC transferred approximately $3,494,348.04 to China. In particular, based on the reported purchases contained in Debtor TLC's 2018 tax return, accounts payable, and accounts payable aging summary, there were no accounts payable after November 23, 2018. However, between December 2018 and June 2019, at the direction of KIM, Debtor TLC transferred overseas approximately $3,069,606.40 in cash to various unknown Chinese entities ("Chinese Entities") from TLC Corporate Bank Account 2 without receiving anything in exchange.

48.     Likewise, between November 26, 2018 and June 24, 2019, Debtor TLC wired funds from TLC Corporate Bank Account 1 to Chinese Entities totaling $424,741.64.

49.     In total, at the direction of KIM, Debtor TLC transferred approximately $3,494,348.04 to China without receiving anything of value in exchange.

6. Transfer 6: Debtor TLC v. KIMMY

50.     On October 19, 2018, KIM formed KIMMY, a Nevada corporation.

51.     On information and belief, KIMMY houses its inventory at the Donovan Warehouse.

52.     On information and belief, in October of 2018, Plaintiff discovered that, at the direction of KIM, and with the assistance of KWON, Debtor TLC had been moving truckloads of Debtor TLC's inventory from its Acacia Warehouse in California to the Donovan Warehouse in Nevada.

53.     On information and belief, at the direction of KIM, and with the assistance of KWON, Debtor TLC purportedly left $657,822.00 in worthless inventory at its Acacia Warehouse in California. However, Debtor TLC's 2018 taxes reflect no such corresponding cost of disposal.

54.     On information and belief, at the direction of KIM, with the assistance of KWON, Debtor TLC transferred $13,406,883.00 of its inventory to KIMMY.

55.     On information and belief, based on Debtor TLC's 2017 and 2018 taxes, Debtor TLC overvalued the cost of goods sold in 2017 and 2018 in the amounts of $5,645,302.00 and $3,543,032.00, respectively, and undervalued its inventory by the same amount.

56.    On information and belief, on January 7th, January 17th, and May 30th of 2019, at the direction of KIM, Debtor TLC issued three sham invoices ("TLC Sham Invoices") to KIMMY that originally subtotaled $4,061,705.60.

57.    On information and belief, at the direction of KIM, and with the assistance of KWON, as reflected in the TLC Sham Invoices, Debtor TLC offered an unjustifiable discount in the amount of $1,353,901.86 to KIMMY. This unjustifiable discount reflects Debtor TLC's lost profits for the same amount.

58.    Further, the TLC Sham Invoices depart from standard industry practices, omitting item codes, product descriptions, quantities, and unit prices. As a result, the TLC Sham Invoices cannot easily be audited. Moreover, the TLC Sham Invoices serve the purpose of generating a paper trail that seemingly legitimizes payments from KIMMY to Debtor TLC.

59.    The TLC Sham Invoices enabled KIM, through Debtor TLC, to conceal inventory transfers to the Donovan Warehouse in Nevada.

60.    Thereafter, Debtor TLC sold the inventory it moved into the Donovan Warehouse to KIMMY.

61.    Notably, Debtor EP and KIMMY, among other entities connected to KIM, all store inventory at the Donovan Warehouse.

7. Transfer 7: Debtor EP v. KIMMY

62.    After forming KIMMY, KIM caused Debtor EP to transfer EP Assets to KIMMY for de minimis consideration pursuant to a licensing agreement. The value of the EP Assets "licensed" to KIMMY totaled over $13,142,869.96.

63.    In particular, on November 10, 2018, Debtor EP entered a licensing agreement ("Licensing Agreement") with KIMMY, whereby Debtor EP licensed to KIMMY its most valuable assets - the exclusive use of its Amazon Marketplace Identifiers: KimOutlet, Eachpole, and Hoully (collectively, hereinafter referred to as "Amazon IDs") for 5 years with option to extend from November 10, 2023 through November 9, 2028.

64.     In exchange, KIMMY paid Debtor EP $70,542.00 for this Licensing Agreement, which equates to less than 1% of the fair market value of the EP Assets.

65.     Transfers 1 through 7, as described above, are collectively referred to as "Transfers" hereinafter.

66.     After KIMMY, at Kim's direction, and with assistance of all Defendants, raided the coffers of Debtor EP's valuable corporate assets, Debtor EP also filed for bankruptcy in Nevada on February 20, 2020.

### C.  Post-Petition Transfers

67.     The following transfers constitute post-petition transfers as to both Debtors, as such transfers are believed to have occurred after the latter of the two Debtors, Debtor EP, filed its bankruptcy petition on February 20, 2020.

68.     On information and belief, after directing the Transfers to KIMMY, effectively stripping Debtors' of their value and leaving only liabilities, KIM added another corporate smokescreen to extract the maximum value of what were once Debtor TLC's Amazon IDs and to further frustrate the avoidance of these unlawful Transfers.

69.     In particular, on information and belief, KIM, seeking to profit from the pandemic-induced spike in online sales, has directed the post-petition transfer of the Amazon IDs, from KIMMY to BEAUTY, SYNGURU, and/or other yet unidentified entities that were formed by KIM and/or that remain under KIM's direction and control, either directly or indirectly through individuals.

70.     This means that KIM, through Debtors, has sought refuge in bankruptcy, while brazenly conducting this fraudulent transfer scheme, continuing to enjoy the benefits of such a scheme, and placing Debtors' respective creditors under extreme financial stress.

### V. First Claim for Relief: Constructive Fraudulent Transfer

***Avoidance and Recovery of a Fraudulent Transfer (Insolvency)***

**11 U.S.C. §§ 548(a)(1)(B)(ii)(I); 550**

*Transfer 1: Debtor TLC v. KIM and MISOOK*

71.    Plaintiff repeats and re-alleges all of the above allegations and thereby incorporates the same as if set forth fully herein.

72.    Pursuant to 11 U.S.C. § 548(a)(1)(B)(ii)(I), Plaintiff may avoid any transfer made within two years of the bankruptcy filing if Debtor TLC received less than a reasonably equivalent value in exchange for such transfer or obligation and Debtor TLC was insolvent at the time of the transfer.

73.    Transfer 1 constitutes a transfer within the meaning of 11 U.S.C. § 101(54).

74.    Transfer 1 was a transfer of property of Debtor TLC, or of an interest of Debtor TLC in property.

75.    Transfer 1 first occurred on or about January 3, 2018, approximately one year and nine months before Debtor TLC filed its bankruptcy petition, and thus occurred within two years of the TLC Petition Date.

76.    Debtor TLC received less than reasonably equivalent value in exchange for making the Transfer 1.

77.    On the first date Transfer 1 occurred, Debtor TLC's obligations were greater than all of the TLC Assets, at a fair valuation. Pursuant to 11 U.S.C. § 101(32), Debtor TLC was therefore insolvent on the first date Transfer 1 occurred.

78.    Accordingly, Plaintiff is entitled to avoid the Transfer made to KIM and MISOOK under 11 U.S.C. § 548(a)(1)(B)(ii)(I).

79.    Further, 11 U.S.C. § 550(a)(1) provides that, to the extent that a transfer is avoided under 11 U.S.C. § 548, Plaintiff may recover the transferred property, or the value thereof, from the initial transferee.

80.    Accordingly, Plaintiff is entitled to a judgment against KIM and MISOOK avoiding the Transfer and recovering that transferred portion of Transfer 1 from KIM and MISOOK.

**VI. Second Claim for Relief: Constructive Fraudulent Transfer**

***Avoidance and Recovery of a Fraudulent Transfer (Insolvency)***

**11 U.S.C. §§ 548(a)(1)(B)(ii)(I); 550**

*Transfer 2: Debtor TLC v. KIM*

81.    Plaintiff repeats and re-alleges all of the above allegations and thereby incorporates the same as if set forth fully herein.

82.    Pursuant to 11 U.S.C. § 548(a)(1)(B)(ii)(I), Plaintiff may avoid any transfer made within two years of the bankruptcy filing if Debtor TLC received less than a reasonably equivalent value in exchange for such transfer or obligation and Debtor TLC was insolvent at the time of the transfer.

83.    Transfer 2 constitutes a transfer within the meaning of 11 U.S.C. § 101(54).

84.    Transfer 2 was a transfer of property of Debtor TLC, or of an interest of Debtor TLC in property.

85.    Transfer 2 first occurred on or about January 3, 2018, approximately one year and nine months before Debtor TLC filed its bankruptcy petition, and thus occurred within two years of the TLC Petition Date.

86.    Debtor TLC received less than reasonably equivalent value in exchange for making the Transfer 2.

87.    On the first date Transfer 2 occurred, Debtor TLC's obligations were greater than all of the TLC Assets, at a fair valuation. Pursuant to 11 U.S.C. § 101(32), Debtor TLC was therefore insolvent on the first date Transfer 2 occurred.

88.    Accordingly, Plaintiff is entitled to avoid the Transfer made to KIM under 11 U.S.C. § 548(a)(1)(B)(ii)(I).

89.    Further, 11 U.S.C. § 550(a)(1) provides that, to the extent that a transfer is avoided under 11 U.S.C. § 548, Plaintiff may recover the transferred property, or the value thereof, from the initial transferee.

90.    Accordingly, Plaintiff is entitled to a judgment against KIM avoiding Transfer 2 and recovering that transferred portion of Transfer 2 from KIM.

**VII. Third Claim for Relief: Constructive Fraudulent Transfer**

***Avoidance and Recovery of a Fraudulent Transfer (Insolvency)***

**11 U.S.C. §§ 548(a)(1)(B)(ii)(I); 550**

*Transfer 3: Debtor TLC v. KIM*

ANDERSEN
— L A W  F I R M —
— LTD —

91. Plaintiff repeats and re-alleges all of the above allegations and thereby incorporates the same as if set forth fully herein.

92. Pursuant to 11 U.S.C. § 548(a)(1)(B)(ii)(I), Plaintiff may avoid any transfer made within two years of the bankruptcy filing if Debtor TLC received less than a reasonably equivalent value in exchange for such transfer or obligation and Debtor TLC was insolvent at the time of the transfer.

93. Transfer 3 constitutes a transfer within the meaning of 11 U.S.C. § 101(54).

94. Transfer 3 was a transfer of property of Debtor TLC, or of an interest of Debtor TLC in property.

95. Transfer 3 first occurred on or about January 10, 2018, approximately one year and nine months before Debtor TLC filed its bankruptcy petition, and thus occurred within two years of the TLC Petition Date.

96. Debtor TLC received less than reasonably equivalent value in exchange for making the Transfer 2.

97. On the first date Transfer 3 occurred, Debtor TLC's obligations were greater than all of the TLC Assets, at a fair valuation. Pursuant to 11 U.S.C. § 101(32), Debtor TLC was therefore insolvent on the first date Transfer 3 occurred.

98. Accordingly, Plaintiff is entitled to avoid the Transfer made to KIM under 11 U.S.C. § 548(a)(1)(B)(ii)(I).

99. Further, 11 U.S.C. § 550(a)(1) provides that, to the extent that a transfer is avoided under 11 U.S.C. § 548, Plaintiff may recover the transferred property, or the value thereof, from the initial transferee.

100. Accordingly, Plaintiff is entitled to a judgment against KIM avoiding Transfer 3 and recovering that transferred portion of Transfer 3 from KIM.

**VIII. Fourth Claim for Relief: Constructive Fraudulent Transfer**

***Avoidance and Recovery of a Fraudulent Transfer (Insolvency)***

**11 U.S.C. §§ 548(a)(1)(B)(ii)(I); 550**

*Transfer 4: Debtor TLC v. KIM*

101.    Plaintiff repeats and re-alleges all of the above allegations and thereby incorporates the same as if set forth fully herein.

102.    Pursuant to 11 U.S.C. § 548(a)(1)(B)(ii)(I), Plaintiff may avoid any transfer made within two years of the bankruptcy filing if Debtor TLC received less than a reasonably equivalent value in exchange for such transfer or obligation and Debtor TLC was insolvent at the time of the transfer.

103.    Transfer 4 constitutes a transfer within the meaning of 11 U.S.C. § 101(54).

104.    Transfer 4 was a transfer of property of Debtor TLC, or of an interest of Debtor TLC in property.

105.    Transfer 4 first occurred on or about December 14, 2018, approximately eleven months before Debtor TLC filed its bankruptcy petition, and thus occurred within two years of the TLC Petition Date.

106.    Debtor TLC received less than reasonably equivalent value in exchange for making the Transfer 4.

107.    On the first date Transfer 4 occurred, Debtor TLC's obligations were greater than all of the TLC Assets, at a fair valuation. Pursuant to 11 U.S.C. § 101(32), Debtor TLC was therefore insolvent on the first date Transfer 4 occurred.

108.    Accordingly, Plaintiff is entitled to avoid Transfer 4 made to KIM under 11 U.S.C. § 548(a)(1)(B)(ii)(I).

109.    Further, 11 U.S.C. § 550(a)(1) provides that, to the extent that a transfer is avoided under 11 U.S.C. § 548, Plaintiff may recover the transferred property, or the value thereof, from the initial transferee.

110.    Accordingly, Plaintiff is entitled to a judgment against KIM avoiding Transfer 4 and recovering that transferred portion of Transfer 4 from KIM.

### IX. Fifth Claim for Relief: Constructive Fraudulent Transfer

***Avoidance and Recovery of a Fraudulent Transfer (Insolvency)***

**11 U.S.C. §§ 548(a)(1)(B)(ii)(I); 550**

*Transfer 5: Debtor TLC v. Chinese Entities*

111.    Plaintiff repeats and re-alleges all of the above allegations and thereby incorporates the same as if set forth fully herein.

112.    Pursuant to 11 U.S.C. § 548(a)(1)(B)(ii)(I), Plaintiff may avoid any transfer made within two years of the bankruptcy filing if Debtor TLC received less than a reasonably equivalent value in exchange for such transfer or obligation and Debtor TLC was insolvent at the time of the transfer.

113.    Transfer 5 constitutes a transfer within the meaning of 11 U.S.C. § 101(54).

114.    Transfer 5 was a transfer of property of Debtor TLC, or of an interest of Debtor TLC in property.

115.    Transfer 5 first occurred on or about December of 2018, approximately eleven months before Debtor TLC filed its bankruptcy petition, and thus occurred within two years of the TLC Petition Date.

116.    Debtor TLC received less than reasonably equivalent value in exchange for making the Transfer 5.

117.    On the first date Transfer 5 occurred, Debtor TLC's obligations were greater than all of the TLC Assets, at a fair valuation. Pursuant to 11 U.S.C. § 101(32), Debtor TLC was therefore insolvent on the first date Transfer 5 occurred.

118.    Accordingly, Plaintiff is entitled to avoid Transfer 5 made to Chinese Entities under 11 U.S.C. § 548(a)(1)(B)(ii)(I).

119.    Further, 11 U.S.C. § 550(a)(1) provides that, to the extent that a transfer is avoided under 11 U.S.C. § 548, Plaintiff may recover the transferred property, or the value thereof, from the initial transferee.

120.    Accordingly, Plaintiff is entitled to a judgment against Chinese Entities avoiding Transfer 5 and recovering that transferred portion of Transfer 5 from Chinese Entities.

### X. Sixth Claim for Relief: Constructive Fraudulent Transfer

*Avoidance and Recovery of a Fraudulent Transfer (Insolvency)*

**11 U.S.C. §§ 548(a)(1)(B)(ii)(I); 550**

*Transfer 6: Debtor TLC v. Kimmy*

121. Plaintiff repeats and re-alleges all of the above allegations and thereby incorporates the same as if set forth fully herein.

122. Pursuant to 11 U.S.C. § 548(a)(1)(B)(ii)(I), Plaintiff may avoid any transfer made within two years of the bankruptcy filing if Debtor TLC received less than a reasonably equivalent value in exchange for such transfer or obligation and Debtor TLC was insolvent at the time of the transfer.

123. Transfer 6 constitutes a transfer within the meaning of 11 U.S.C. § 101(54).

124. Transfer 6 was a transfer of property of Debtor TLC, or of an interest of Debtor TLC in property.

125. Transfer 6 first occurred on or about January 7, 2019, nine months before Debtor TLC filed its bankruptcy petition, and thus occurred within two years of the TLC Petition Date.

126. Debtor TLC received less than reasonably equivalent value in exchange for making the Transfer 6.

127. On the first date Transfer 6 occurred, Debtor TLC's obligations were greater than all of the TLC Assets, at a fair valuation. Pursuant to 11 U.S.C. § 101(32), Debtor TLC was therefore insolvent on the first date Transfer 6 occurred.

128. Accordingly, Plaintiff is entitled to avoid Transfer 6 made to KIMMY under 11 U.S.C. § 548(a)(1)(B)(ii)(I).

129. Further, 11 U.S.C. § 550(a)(1) provides that, to the extent that a transfer is avoided under 11 U.S.C. § 548, Plaintiff may recover the transferred property, or the value thereof, from the initial transferee.

130. Accordingly, Plaintiff is entitled to a judgment against KIMMY avoiding Transfer 6 and recovering that transferred portion of Transfer 6 from KIMMY.

### XI. Seventh Claim for Relief: Constructive Fraudulent Transfer

*Avoidance and Recovery of a Fraudulent Transfer (Insolvency)*

**11 U.S.C. §§ 548(a)(1)(B)(ii)(I); 550**

*Transfer 7: Debtor EP v. Kimmy*

131.    Plaintiff repeats and re-alleges all of the above allegations and thereby incorporates the same as if set forth fully herein.

132.    Pursuant to 11 U.S.C. § 548(a)(1)(B)(ii)(I), Plaintiff may avoid any transfer made within two years of the bankruptcy filing if Debtor EP received less than a reasonably equivalent value in exchange for such transfer or obligation and Debtor EP was insolvent at the time of the transfer.

133.    Transfer 7 constitutes a transfer within the meaning of 11 U.S.C. § 101(54).

134.    Transfer 7 was a transfer of property of Debtor EP, or of an interest of Debtor EP in property.

135.    Transfer 7 first occurred on or about November 10, 2018, one year and three months before Debtor EP filed its bankruptcy petition, and thus occurred within two years of the Petition Date.

136.    Debtor EP received less than reasonably equivalent value in exchange for making the Transfer 7.

137.    On the first date Transfer 7 occurred, Debtor EP's obligations were greater than all of the EP Assets, at a fair valuation. Pursuant to 11 U.S.C. § 101(32), Debtor EP was therefore insolvent on the first date Transfer 7 occurred.

138.    Accordingly, Plaintiff is entitled to avoid Transfer 7 made to KIMMY under 11 U.S.C. § 548(a)(1)(B)(ii)(I).

139.    Further, 11 U.S.C. § 550(a)(1) provides that, to the extent that a transfer is avoided under 11 U.S.C. § 548, Plaintiff may recover the transferred property, or the value thereof, from the initial transferee.

140.    Accordingly, Plaintiff is entitled to a judgment against KIMMY avoiding Transfer 7 and recovering that transferred portion of Transfer 7 from KIMMY.

## XII. Eighth Claim for Relief: Constructive Fraudulent Transfer

### *Avoidance and Recovery of a Fraudulent Transfer*

### **11 U.S.C. §§ 548(a)(1)(B)(ii)(II); 550**

*Transfer 1: Debtor TLC v. KIM and MISOOK*

141.    Plaintiff repeats and re-alleges all of the above allegations and thereby incorporates the same as if set forth fully herein.

142.    Pursuant to 11 U.S.C. § 548(a)(1)(B)(ii)(II), Plaintiff may avoid any transfer made within two years of the bankruptcy filing if Debtor TLC received less than a reasonably equivalent value in exchange for such transfer or obligation and, at the direction of KIM, Debtor TLC paid $1,015,000.00 for Misook and Kim's personal taxes from TLC Corporate Bank Account 1 for which any capital remaining with Debtor TLC was an unreasonably small amount of capital at the time of the transfer.

143.    Transfer 1 constitutes a transfer within the meaning of 11 U.S.C. § 101(54).

144.    Transfer 1 was a transfer of property of Debtor TLC, or of an interest of Debtor TLC in property.

145.    Transfer 1 first occurred on or about January 3, 2018, approximately one year and nine months before Debtor TLC filed its bankruptcy petition, and thus occurred within two years of the TLC Petition Date.

146.    Debtor TLC received less than reasonably equivalent value in exchange for making the Transfer 1.

147.    On the first date Transfer 1 occurred, Debtor TLC's obligations were greater than all of the TLC Assets, at a fair valuation. Pursuant to 11 U.S.C. § 101(32), Debtor TLC was therefore insolvent on the first date Transfer 1 occurred.

148.    Accordingly, Plaintiff is entitled to avoid Transfer 1 made to KIM and MISOOK under 11 U.S.C. § 548(a)(1)(B)(ii)(II).

149.    Further, 11 U.S.C. § 550(a)(1) provides that, to the extent that a transfer is avoided under 11 U.S.C. § 548, Plaintiff may recover the transferred property, or the value thereof, from the initial transferee.

150.    Accordingly, Plaintiff is entitled to a judgment against KIM and MISOOK avoiding Transfer 1 and recovering that transferred portion of Transfer 1 from KIM and MISOOK.

**XIII. Ninth Claim for Relief: Constructive Fraudulent Transfer**

***Avoidance and Recovery of a Fraudulent Transfer***

**11 U.S.C. §§ 548(a)(1)(B)(ii)(II); 550**

*Transfer 2: Debtor TLC v. KIM*

151.    Plaintiff repeats and re-alleges all of the above allegations and thereby incorporates the same as if set forth fully herein.

152.    Pursuant to 11 U.S.C. § 548(a)(1)(B)(ii)(II), Plaintiff may avoid any transfer made within two years of the bankruptcy filing if Debtor TLC received less than a reasonably equivalent value in exchange for such transfer or obligation and, at the direction of KIM, Debtor TLC paid some portion of $228,984.93 to Kim's personal BofA credit card, using funds from the TLC Corporate Bank Account 1 for which any capital remaining with Debtor TLC was an unreasonably small amount of capital at the time of the transfer.

153.    Transfer 2 constitutes a transfer within the meaning of 11 U.S.C. § 101(54).

154.    Transfer 2 was a transfer of property of Debtor TLC, or of an interest of Debtor TLC in property.

155.    Transfer 2 first occurred on or about January 3, 2018, approximately one year and nine months before Debtor TLC filed its bankruptcy petition, and thus occurred within two years of the TLC Petition Date.

156.    Debtor TLC received less than reasonably equivalent value in exchange for making the Transfer 2.

157.    On the first date Transfer 2 occurred, Debtor TLC's obligations were greater than all of the TLC Assets, at a fair valuation. Pursuant to 11 U.S.C. § 101(32), Debtor TLC was therefore insolvent on the first date Transfer 2 occurred.

158.    Accordingly, Plaintiff is entitled to avoid Transfer 2 made to KIM under 11 U.S.C. § 548(a)(1)(B)(ii)(II).

159.    Further, 11 U.S.C. § 550(a)(1) provides that, to the extent that a transfer is avoided under 11 U.S.C. § 548, Plaintiff may recover the transferred property, or the value thereof, from the initial transferee.

160. Accordingly, Plaintiff is entitled to a judgment against KIM avoiding Transfer 2 and recovering that transferred portion of Transfer 2 from KIM.

### XIV. Tenth Claim for Relief: Constructive Fraudulent Transfer

*Avoidance and Recovery of a Fraudulent Transfer*

**11 U.S.C. §§ 548(a)(1)(B)(ii)(II); 550**

*Transfer 3: Debtor TLC v. KIM*

161. Plaintiff repeats and re-alleges all of the above allegations and thereby incorporates the same as if set forth fully herein.

162. Transfer 3 constitutes a transfer within the meaning of 11 U.S.C. § 101(54).

163. Transfer 3 was a transfer of property of Debtor TLC, or of an interest of Debtor TLC in property.

164. Transfer 3 first occurred on or about January 10, 2018, approximately one year and nine months before Debtor TLC filed its bankruptcy petition, and thus occurred within two years of the TLC Petition Date.

165. Debtor TLC received less than reasonably equivalent value in exchange for making the Transfer 2.

166. On the first date Transfer 3 occurred, Debtor TLC debts were greater than all of Debtor TLC's property, at a fair valuation, exclusive of exempted property. Pursuant to 11 U.S.C. § 101(32), Debtor TLC was therefore insolvent on the first date Transfer 3 occurred.

167. Pursuant to 11 U.S.C. § 548(a)(1)(B)(ii)(II), Plaintiff may avoid any transfer made within two years of the bankruptcy filing if Debtor TLC received less than a reasonably equivalent value in exchange for such transfer or obligation and, at the direction of KIM, and, at the direction of KIM, Debtor TLC paid some portion of $629,292.83 to KIM's personal credit card, using funds from TLC Corporate Bank Account 2, for which any capital remaining with Debtor TLC was an unreasonably small amount of capital at the time of the transfer.

168. Accordingly, Plaintiff is entitled to avoid Transfer 3 made to KIM under 11 U.S.C. § 548(a)(1)(B)(ii)(II).

169.    Further, 11 U.S.C. § 550(a)(1) provides that, to the extent that a transfer is avoided under 11 U.S.C. § 548, Plaintiff may recover the transferred property, or the value thereof, from the initial transferee.

170.    Accordingly, Plaintiff is entitled to a judgment against KIM avoiding Transfer 3 and recovering that transferred portion of Transfer 3 from KIM.

### XV. Eleventh Claim for Relief: Constructive Fraudulent Transfer

*Avoidance and Recovery of a Fraudulent Transfer*

**11 U.S.C. §§ 548(a)(1)(B)(ii)(II); 550**

*Transfer 4: Debtor TLC v. KIM*

171.    Plaintiff repeats and re-alleges all of the above allegations and thereby incorporates the same as if set forth fully herein.

172.    Pursuant to 11 U.S.C. § 548(a)(1)(B)(ii)(II), Plaintiff may avoid any transfer made within two years of the bankruptcy filing if Debtor TLC received less than a reasonably equivalent value in exchange for such transfer or obligation and, at the direction of KIM, Debtor TLC paid some portion of $117,034.44 to KIM's personal Chase credit card ending 6110 from TLC Corporate Bank Account 2, for which any capital remaining with Debtor TLC was an unreasonably small amount of capital at the time of the transfer.

173.    Transfer 4 constitutes a transfer within the meaning of 11 U.S.C. § 101(54).

174.    Transfer 4 was a transfer of property of Debtor TLC, or of an interest of Debtor TLC in property.

175.    Transfer 4 first occurred on or about December 14, 2018, approximately eleven months before Debtor TLC filed its bankruptcy petition, and thus occurred within two years of the TLC Petition Date.

176.    Debtor TLC received less than reasonably equivalent value in exchange for making the Transfer 4.

ANDERSEN
— L A W   F I R M —
— LTD —

177.    On the first date Transfer 4 occurred, Debtor TLC's obligations were greater than all of the TLC Assets, at a fair valuation. Pursuant to 11 U.S.C. § 101(32), Debtor TLC was therefore insolvent on the first date Transfer 4 occurred.

178.    Accordingly, Plaintiff is entitled to avoid Transfer 4 made to KIM under 11 U.S.C. § 548(a)(1)(B)(ii)(II).

179.    Further, 11 U.S.C. § 550(a)(1) provides that, to the extent that a transfer is avoided under 11 U.S.C. § 548, Plaintiff may recover the transferred property, or the value thereof, from the initial transferee.

180.    Accordingly, Plaintiff is entitled to a judgment against KIM avoiding Transfer 4 and recovering that transferred portion of Transfer 4 from KIM.

### XVI. Twelfth Claim for Relief: Constructive Fraudulent Transfer

#### *Avoidance and Recovery of a Fraudulent Transfer*

#### **11 U.S.C. §§ 548(a)(1)(B)(ii)(II); 550**

*Transfer 5: Debtor TLC v. Chinese Entities (Roe Corporations)*

181.    Plaintiff repeats and re-alleges all of the above allegations and thereby incorporates the same as if set forth fully herein.

182.    Pursuant to 11 U.S.C. § 548(a)(1)(B)(ii)(II), Plaintiff may avoid any transfer made within two years of the bankruptcy filing if Debtor TLC received less than a reasonably equivalent value in exchange for such transfer or obligation and Debtor TLC transferred over $3M to Chinese Entities located in the Republic of China, for which any capital remaining with Debtor TLC was an unreasonably small amount of capital at the time of the transfer.

183.    Transfer 5 constitutes a transfer within the meaning of 11 U.S.C. § 101(54).

184.    Transfer 5 was a transfer of property of Debtor TLC, or of an interest of Debtor TLC in property.

185.    Transfer 5 first occurred on or about December of 2018, approximately eleven months before Debtor TLC filed its bankruptcy petition, and thus occurred within two years of the TLC Petition Date.

ANDERSEN
— L A W   F I R M —
LTD

1    186.    Debtor TLC received less than reasonably equivalent value in exchange for making the

2    Transfer 5.

3    187.    On the first date Transfer 5 occurred, Debtor TLC's obligations were greater than all of

4    the TLC Assets, at a fair valuation. Pursuant to 11 U.S.C. § 101(32), Debtor TLC was therefore insolvent

5    on the first date Transfer 5 occurred.

6    188.    Accordingly, Plaintiff is entitled to avoid Transfer 5 made to under 11 U.S.C. §

7    548(a)(1)(B)(ii)(II).

8    189.    Further, 11 U.S.C. § 550(a)(1) provides that, to the extent that a transfer is avoided under

9    11 U.S.C. § 548, Plaintiff may recover the transferred property, or the value thereof, from the initial

10    transferee.

11    190.    Accordingly, Plaintiff is entitled to a judgment against Chinese Entities avoiding Transfer

12    5 and recovering that transferred portion of Transfer 5 from Chinese Entities.

### XVII. Thirteenth Claim for Relief: Constructive Fraudulent Transfer

#### *Avoidance and Recovery of a Fraudulent Transfer*

#### **11 U.S.C. §§ 548(a)(1)(B)(ii)(II); 550**

*Transfer 6: Debtor TLC v. KIMMY*

17    191.    Plaintiff repeats and re-alleges all of the above allegations and thereby incorporates the

18    same as if set forth fully herein.

19    192.    Pursuant to 11 U.S.C. § 548(a)(1)(B)(ii)(II), Plaintiff may avoid any transfer made within

20    two years of the bankruptcy filing if Debtor TLC received less than a reasonably equivalent value in

21    exchange for such transfer or obligation and Debtor TLC issued the TLC Sham Invoices to KIMMY at

22    a significant and unjustifiable discount and transferring most, if not all of its inventory to KIMMY for

23    which any capital remaining with Debtor TLC was an unreasonably small amount of capital at the time

24    of the transfer.

25    193.    Transfer 6 constitutes a transfer within the meaning of 11 U.S.C. § 101(54).

26    194.    Transfer 6 was a transfer of property of Debtor TLC, or of an interest of Debtor TLC in

27    property.

ANDERSEN
— L A W  F I R M —
— LTD —

195.    Transfer 6 first occurred on or about January 7, 2019, nine months before Debtor TLC filed its bankruptcy petition, and thus occurred within two years of the TLC Petition Date.

196.    Debtor TLC received less than reasonably equivalent value in exchange for making the Transfer 6.

197.    On the first date Transfer 6 occurred, Debtor TLC's obligations were greater than all of the TLC Assets, at a fair valuation. Pursuant to 11 U.S.C. § 101(32), Debtor TLC was therefore insolvent on the first date Transfer 6 occurred.

198.    Accordingly, Plaintiff is entitled to avoid Transfer 6 made to KIMMY under 11 U.S.C. § 548(a)(1)(B)(ii)(II).

199.    Further, 11 U.S.C. § 550(a)(1) provides that, to the extent that a transfer is avoided under 11 U.S.C. § 548, Plaintiff may recover the transferred property, or the value thereof, from the initial transferee.

200.    Accordingly, Plaintiff is entitled to a judgment against KIMMY avoiding Transfer 6 and recovering that transferred portion of Transfer 6 from KIMMY.

## XVIII. Fourteenth Claim for Relief: Constructive Fraudulent Transfer

### *Avoidance and Recovery of a Fraudulent Transfer*

### 11 U.S.C. §§ 548(a)(1)(B)(ii)(II); 550

*Transfer 7: Debtor EP v. KIMMY*

201.    Plaintiff repeats and re-alleges all of the above allegations and thereby incorporates the same as if set forth fully herein.

202.    Pursuant to 11 U.S.C. § 548(a)(1)(B)(ii)(II), Plaintiff may avoid any transfer made within two years of the bankruptcy filing if Debtor EP received less than a reasonably equivalent value in exchange for such transfer or obligation and Debtor EP entered into the Licensing Agreement to license all of its assets to KIMMY for which any capital remaining with Debtor EP was an unreasonably small amount of capital at the time of the transfer.

203.    Transfer 7 constitutes a transfer within the meaning of 11 U.S.C. § 101(54).

204. Transfer 7 was a transfer of property of Debtor EP, or of an interest of Debtor EP in property.

205. Transfer 7 first occurred on or about November 10, 2018, one year and three months before Debtor EP filed its bankruptcy petition, and thus occurred within two years of the EP Petition Date.

206. Debtor EP received less than reasonably equivalent value in exchange for making the Transfer 7.

207. On the first date Transfer 7 occurred, Debtor EP's obligations were greater than all of the EP Assets, at a fair valuation. Pursuant to 11 U.S.C. § 101(32), Debtor EP was therefore insolvent on the first date Transfer 7 occurred.

208. Accordingly, Plaintiff is entitled to avoid Transfer 7 made to KIMMY under 11 U.S.C. § 548(a)(1)(B)(ii)(II).

209. Further, 11 U.S.C. § 550(a)(1) provides that, to the extent that a transfer is avoided under 11 U.S.C. § 548, Plaintiff may recover the transferred property, or the value thereof, from the initial transferee.

210. Accordingly, Plaintiff is entitled to a judgment against KIMMY avoiding Transfer 7 and recovering the EP Assets that were transferred as part of Transfer 7 from KIMMY.

### XIX. Fifteenth Claim for Relief: Breach of Fiduciary Duty

*Debtor TLC v. KIM, KWON, and PANCHAL*

211. Plaintiff repeats and re-alleges all of the above allegations and thereby incorporates the same as if set forth fully herein.

212. At all relevant times, Debtor TLC was a California formed and domiciled in the State of California, meaning California law applies to its internal affairs, including, without limitation, the fiduciary duties owed by its officers, directors, shareholders, and/or responsible persons.

213. At all relevant times, KIM, KWON, and PANCHAL were officers, directors, shareholders, and/or responsible persons in control of Debtor TLC.

214. As officers, directors, shareholders, and/or responsible persons in control of the Debtor TLC, KIM, KWON, and PANCHAL owed fiduciary duties to Debtor TLC and its creditors, including but not limited to, an undivided duty of good faith, duty of loyalty, duty of care, and duty of disclosure.

215. KIM, KWON, and PANCHAL knew or should have known that Transfers 1, 2, 3, 4, 5, and 6 diverted, dissipated and unduly risked all of Debtor TLC's corporate TLC Assets, without Debtor TLC receiving reasonably equivalent value for such assets.

216. KIM, KWON, and PANCHAL knew or should have known that TRANSFERS 1, 2, 3, 4, 5, and 6 were undertaken for the ultimate benefit of KIM, at the expense of Debtor TLC.

217. KIM, KWON, and PANCHAL knew or should have known that Debtor TLC was being used as part of a fraudulent scheme to divert assets from creditors that might otherwise have been used to pay creditor's claims.

218. Upon information and belief, KIM, KWON, and PANCHAL knew or should have known that Debtor TLC was an insolvent corporate debtor.

219. Because the Transfers detailed herein were intended to and did in fact defraud creditors of Debtor TLC, the fraudulent scheme detailed herein cannot be considered good faith business transactions entered into by Debtor TLC for a legitimate business purpose.

220. KIM, KWON, and PANCHAL each owed a duty of loyalty to Debtor TLC, which required them to each refrain from acting in their own interests and against Debtor TLC's interests.

221. KIM violated the duty of loyalty he owed to Debtor TLC causing Debtor TLC to make the Transfers detailed herein, which were for his benefit and at the expense of Debtor TLC.

222. KIM, KWON, and PANCHAL each owed a duty of good faith to Debtor TLC, which required that each act of them with conscious regard for their responsibilities as fiduciaries in making decisions.

223. As a result, KIM, KWON, and PANCHAL violated the duty of good faith by engaging, authorizing, and assisting in the fraudulent scheme detailed herein, as the duty of good faith would have required them to honor their responsibilities as fiduciaries and act to prevent, remedy, or report such Transfers.

224.    KIM, KWON, and PANCHAL, each owed a duty of care to Debtor TLC, which required them to act with the same care as an ordinarily prudent person in a like position would use in similar circumstances, including conducting a reasonable inquiry.

225.    KIM, KWON, and PANCHAL each violated the duty of care by engaging, authorizing or assisting in the fraudulent scheme detailed herein, as the duty of care would have required them to decline to approve of or allow such transfers and transactions.

226.    Alternatively, KIM, KWON, or PANCHAL failed to conduct an inquiry regarding the fraudulent scheme detailed herein, and, as a result, each violated the duty of care by failing to conduct such inquiry.

227.    Alternatively, KIM, KWON, or PANCHAL abdicated the duty of good faith and duty of care by wholly failing to oversee the actions of Debtor TLC, in violation of the duty of good faith and duty of care.

228.    By agreeing to allow KIMMY to deplete the assets of the insolvent debtor entity, Debtor TLC, without first satisfying the debts of Debtor TLC, KIM, KWON, and PANCHAL breached KIM, KWON, and PANCHAL's fiduciary duties to Debtor TLC.

229.    Accordingly, Plaintiff is entitled to a judgment against KIM, KWON, and PANCHAL recovering the TLC Assets that were transferred as part of Transfers 1, 2, 3, 4, 5, and 6 from KIM, KWON, and PANCHAL.

**XX. Sixteenth Claim for Relief: Breach of Fiduciary Duty**

*Debtor EP v. KIM, MISOOK, and CHRIS*

230.    Plaintiff repeats and re-alleges all of the above allegations and thereby incorporates the same as if set forth fully herein.

231.    At all relevant times, Debtor EP was a California formed and domiciled in the State of California, meaning California law applies to its internal affairs, including, without limitation, the fiduciary duties owed by its officers, directors, shareholders, and/or responsible persons.

232.    At all relevant times, KIM, MISOOK, and CHRIS were officers, directors, shareholders, and/or responsible persons in control of Debtor EP.

233.    As officers, directors, shareholders, and/or responsible persons in control of the Debtor EP, KIM, MISOOK, and CHRIS owed fiduciary duties to Debtor EP and its creditors, including but not limited to, an undivided duty of good faith, duty of loyalty, duty of care, and duty of disclosure.

234.    KIM, MISOOK, and CHRIS knew or should have known that Transfers 1, 2, 3, 4, 5, and 6 diverted, dissipated and unduly risked all of Debtor EP's corporate EP Assets, without Debtor EP receiving reasonably equivalent value for such assets.

235.    KIM, MISOOK, and CHRIS knew or should have known that TRANSFERS 1, 2, 3, 4, 5, and 6 were undertaken for the ultimate benefit of KIM and MISOOK, at the expense of Debtor EP.

236.    KIM, MISOOK, and CHRIS knew or should have known that Debtor EP was being used as part of a fraudulent scheme to divert assets from creditors that might otherwise have been used to pay creditor's claims.

237.    Upon information and belief, KIM, MISOOK, and CHRIS knew or should have known that Debtor EP was an insolvent corporate debtor.

238.    Because the Transfers detailed herein were intended to and did in fact defraud creditors of Debtor EP, the fraudulent schemes detailed herein cannot be considered good faith business transactions entered into by Debtor EP for a legitimate business purpose.

239.    KIM, MISOOK, and CHRIS each owed a duty of loyalty to Debtor EP, which required them to each refrain from acting in their own interests and against Debtor EP's interests.

240.    KIM and MISOOK violated the duty of loyalty he owed to Debtor EP causing Debtor EP to make the Transfers detailed herein, which were for their benefit and at the expense of Debtor EP.

241.    KIM, MISOOK, and CHRIS each owed a duty of good faith to Debtor EP, which required that each act of them with conscious regard for their responsibilities as fiduciaries in making decisions.

242.    As a result, KIM, MISOOK, and CHRIS violated the duty of good faith by engaging, authorizing, and assisting in the fraudulent scheme detailed herein, as the duty of good faith would have required them to honor their responsibilities as fiduciaries and act to prevent, remedy, or report such Transfers.

243.    KIM, MISOOK, and CHRIS, each owed a duty of care to Debtor EP, which required them to act with the same care as an ordinarily prudent person in a like position would use in similar circumstances, including conducting a reasonable inquiry.

244.    KIM, MISOOK, and CHRIS each violated the duty of care by engaging, authorizing or assisting in the fraudulent scheme detailed herein, as the duty of care would have required them to decline to approve of or allow such Transfers.

245.    Alternatively, KIM, MISOOK, or CHRIS failed to conduct an inquiry regarding the fraudulent scheme detailed herein, and, as a result, each violated the duty of care by failing to conduct such inquiry.

246.    Alternatively, KIM, MISOOK, or CHRIS abdicated the duty of good faith and duty of care by wholly failing to oversee the actions of Debtor EP, in violation of the duty of good faith and duty of care.

247.    By agreeing to allow KIMMY to deplete the assets of the insolvent debtor entity, Debtor TLC, without first satisfying the debts of Debtor EP, KIM, MISOOK, and CHRIS breached KIM, KWON, and CHRIS's fiduciary duties to Debtor EP.

248.    Accordingly, Plaintiff is entitled to a judgment against KIM, MISOOK, and CHRIS recovering the EP Assets that were transferred as part of Transfers 1, 2, 3, 4, 5, and 6 from KIM, KWON, and CHRIS.

## XXI. Seventeenth Claim for Relief: Conversion

### *Transfers 1: Debtor TLC v. MISOOK and KIM*

249.    Plaintiff repeats and re-alleges all of the above allegations and thereby incorporates the same as if set forth fully herein.

250.    Debtor TLC had the right to possess the TLC Assets, including the funds contained in the TLC Corporate Bank Accounts 1 and 2, inventory, accounts receivables, among other corporate assets.

251.    MISOOK and KIM intentionally interfered with Debtor TLC's right to possess the TLC Assets by directing Transfer 1.

252.    MISOOK and KIM deprived the Debtor TLC of possession or use of the TLC Assets.

1    253.    MISOOK and KIM's interference caused damages to Debtor TLC.

2    254.    Accordingly, Plaintiff is entitled to a judgment against KIM and MISOOK recovering

3  the TLC Assets that were transferred as part of Transfer 1 from KIM and MISOOK.

**XXII. Eighteenth Claim for Relief: Conversion**

*Transfers 2-5: Debtor TLC v. KIM*

255.    Plaintiff repeats and re-alleges all of the above allegations and thereby incorporates the same as if set forth fully herein.

256.    Debtor TLC had the right to possess the TLC Assets, including the funds contained in the TLC Corporate Bank Accounts 1 and 2, inventory, accounts receivables, among other corporate assets.

257.    KIM intentionally interfered with Debtor TLC's right to possess the TLC Assets by directing Transfer 2, 3, 4, and 5.

258.    KIM deprived the Debtor TLC of possession or use of the TLC Assets.

259.    KIM's interference caused damages to Debtor TLC.

260.    Accordingly, Plaintiff is entitled to a judgment against KIM recovering the TLC Assets that were transferred as part of Transfer 2, 3, 4, and 5 from KIM.

**XXIII. Nineteenth Claim for Relief: Conversion**

*Transfer 6: Debtor TLC v. KIMMY*

261.    Plaintiff repeats and re-alleges all of the above allegations and thereby incorporates the same as if set forth fully herein.

262.    Debtor TLC had the right to possess the TLC Assets, including the funds contained in the TLC Corporate Bank Accounts 1 and 2, inventory, accounts receivables, among other corporate assets.

263.    KIMMY intentionally interfered with Debtor TLC's right to possess the TLC Assets by directing Transfer 6.

264.    KIMMY deprived the Debtor TLC of possession or use of the TLC Assets.

265.    KIMMY's interference caused damages to Debtor TLC.

266.    Accordingly, Plaintiff is entitled to a judgment against KIMMY recovering the TLC Assets that were transferred as part of Transfer 6 from KIMMY.

ANDERSEN
— L A W  F I R M —
— LTD —

**XXIV. Twentieth Claim for Relief**

*Conspiracy to Commit Constructive Fraud Pursuant to 11 U.S.C. 548(a)(1)(B)(ii)(I)*

*Transfer 1: Debtor TLC v. KIM and MISOOK*

267.    Plaintiff hereby incorporate by reference each of the preceding paragraphs of this complaint as if fully set forth herein.

268.    KIM and MISOOK acted together, in their individual capacities for their own individual advantage, by directing Transfer 1 in pursuit the unlawful objectives detailed in the First Claim for Relief (Constructive Fraudulent Transfer Pursuant to 11 U.S.C. 548(a)(1)(B)(ii)(I)), intending to deplete Debtor TLC of the TLC Assets, diverting the TLC Assets to themselves, in an effort to avoid paying the creditors of Debtor TLC on debts as they became due, including Linco, in its capacity as a judgment creditor of Debtor TLC.

269.    Because KIM and MISOOK directed Transfer 1, effectively rendering Debtor TLC insolvent, the creditors of Debtor TLC, including Linco, in its capacity as a judgment creditor of Debtor TLC, sustained damages.

270.    Accordingly, Plaintiff is entitled to a judgment against KIM and MISOOK recovering the TLC Assets that were transferred as part of Transfer 1 from KIM and MISOOK.

**XXV. Twenty-First Claim for Relief**

*Conspiracy to Commit Constructive Fraud Pursuant to 11 U.S.C. 548(a)(1)(B)(ii)(II)*

*Transfer 1: Debtor TLC v. KIM and MISOOK*

271.    Plaintiff hereby incorporate by reference each of the preceding paragraphs of this complaint as if fully set forth herein.

272.    KIM and MISOOK acted together, in their individual capacities for their own individual advantage, by directing Transfer 1 in pursuit the unlawful objectives detailed in the Eighth Claim for Relief (Constructive Fraudulent Transfer Pursuant to 11 U.S.C. 548(a)(1)(B)(ii)(II)), intending to deplete Debtor TLC of the TLC Assets, diverting the TLC Assets to themselves, in an effort to avoid paying the creditors of Debtor TLC on debts as they became due, including Linco, in its capacity as a judgment creditor of Debtor TLC.

273.    Because KIM and MISOOK directed Transfer 1, effectively rendering Debtor TLC insolvent, the creditors of Debtor TLC, including Linco, in its capacity as a judgment creditor of Debtor TLC, sustained damages.

274.    Accordingly, Plaintiff is entitled to a judgment against KIM and MISOOK recovering the TLC Assets that were transferred as part of Transfer 1 from KIM and MISOOK.

### XXVI. Twenty-Second Claim for Relief

*Conspiracy of Conversion*

*Transfer 1: Debtor TLC v. KIM and MISOOK*

275.    Plaintiff hereby incorporate by reference each of the preceding paragraphs of this complaint as if fully set forth herein.

276.    KIM and MISOOK acted together, in their individual capacities for their own individual advantage, by directing Transfer 1 in pursuit the unlawful objectives detailed in the Fourth Claim for Relief (Conversion) intentionally interfering with Debtor TLC's right to possess the TLC Assets by directing Transfer 1, diverting the TLC Assets to themselves, and depriving Debtor TLC of possession or use of the TLC Assets, in an effort to avoid paying the creditors of Debtor TLC on debts as they became due, including Linco, in its capacity as a judgment creditor of Debtor TLC.

277.    Because KIM and MISOOK directed Transfer 1, effectively rendering Debtor TLC insolvent, the creditors of Debtor TLC, including Linco, in its capacity as a judgment creditor of Debtor TLC, sustained damages.

278.    Accordingly, Plaintiff is entitled to a judgment against KIM and MISOOK recovering the TLC Assets that were transferred as part of Transfer 1 from KIM and MISOOK.

### XXVII. Twenty-Third Claim for Relief: Turnover of Property of the Estate

*Against All Defendants*

279.    Plaintiff repeats and re-alleges all of the above allegations and thereby incorporates the same as if set forth fully herein.

280.    Upon avoidance of the Transfers, Defendants would be in possession and/or control of the TLC Assets and the EP Assets.

281.     Plaintiff needs access to the TLC Assets and the EP Assets, so that the TLC Assets and the EP Assets can be readied for sale, an appraisal can be obtained, and access can be provided to prospective buyers.

282.     Pursuant to Section 542, any entity in possession or control of property of the TLC Estate and EP Estate that the Plaintiff can sell shall deliver that property to Plaintiff. 11 U.S.C. § 542(a).

283.     Accordingly, upon avoidance of the Transfers, Plaintiff would be entitled to a judgment against Defendants ordering Defendants to deliver the TLC Assets and EP Assets to Plaintiff.

### XXVIII. Twenty-Fourth Claim for Relief: Substantive Consolidation

*Against KIM, MISOOK, KIMMY, BEAUTY, and SYNGURU*

284.     Plaintiff repeats and re-alleges all of the above allegations and thereby incorporates the same as if set forth fully herein.

285.     The equitable remedy of substantive consolidation is appropriate where either: (i) creditors dealt with the entities as a single economic unit and did not rely on their separate identity in extending credit: or (ii) whether the affairs of the debtor are so entangled that consolidation will benefit all creditors.

286.     Here, given the fraudulent scheme, creditors either knowingly or unknowingly dealt with the Debtor TLC, Debtor EP, KIM, MISOOK, KIMMY, BEAUTY, and SYNGURU as a single economic unit and did not rely on the separate identity of any of Debtor TLC, Debtor EP, KIM, MISOOK, KIMMY, BEAUTY, and SYNGURU.

287.     Alternatively, given the fraudulent scheme, the intertwined nature of the business dealings, and the Transfers each detailed herein, the affairs of Debtor TLC, Debtor EP, KIM, MISOOK, KIMMY, BEAUTY, and SYNGURU, are so entangled that substantive consolidation will benefit all creditors.

288.     As a result, Plaintiff is entitled to judgment and entry of an order substantively consolidating Debtor TLC, Debtor EP, KIM, MISOOK, KIMMY, BEAUTY, and SYNGURU.

### XXIX. Twenty-Fifth Claim for Relief: Injunctive Relief

*Against All Defendants*

ANDERSEN
— L A W   F I R M —
LTD

289.    Plaintiff repeats and re-alleges all of the above allegations and thereby incorporates the same as if set forth fully herein.

290.    Plaintiff requests: temporary restraining orders, preliminary injunctions, and permanent injunctions enjoining Defendants, and each of them, from transferring any interest in the TLC Assets and EP Assets and all books and records pertaining thereto or from otherwise destroying, hypothecating, damaging, or depriving Plaintiff therefrom;

291.    A temporary restraining order, preliminary injunction, and permanent injunction barring Defendants from disposing of any property or removing any funds from any of their financial accounts without permission of this Court;

292.    An order compelling Defendants to provide to Plaintiff a complete accounting of each Debtors, Defendants, and their above-indicated privies;

293.    For injunctive relief restraining Defendants, their agents, employees, representatives and/or anyone acting in concert or participation with them, from concealing or otherwise removing any of the TLC Assets and EP Assets and books and records pertaining thereto;

294.    For an order enjoining Defendants and their above-indicated privies from in any way impairing the value of the TLC Assets and EP Assets and defacing, removing, obstructing, or otherwise impairing the legibility and/or existence of all books and records pertaining to the TLC Assets and EP Assets' and

295.    An order requiring Defendants to immediately provide Plaintiff access to all the books and records of the Debtors, including all information concerning all of the TLC Assets and EP Assets' financial accounts; and Such other equitable relief as may be requested by the Plaintiff or deemed appropriate by the Court.

## **XXX. Prayer for Relief**

**WHEREFORE,** Plaintiff requests that this Court enter a judgment in favor of the Plaintiff and against Defendants, as follows:

      a.    For an award of damages in an amount in excess of $10,000.00, to be proven at trial.

      b.    For an award of prejudgment interest;

c.   For an award of post-judgment interest;

d.   For an award of punitive or exemplary damages;

e.   For an award of equitable relief as set forth in this Complaint;

f.   For an award of attorneys' fees and costs incurred in this action; and

g.   For an award of such other and further relief as the Court deems just and proper under the circumstances.

Dated this 18th day of December, 2020.

Respectfully submitted by:

ANDERSEN LAW FIRM, LTD.

By:    /s/ Ryan A. Andersen
       Ryan A. Andersen, Esq.
       Nevada Bar No. 12321
       3199 E Warm Springs Rd, Ste 400
       Las Vegas, Nevada 89120

And by:

LEXINT LAW GROUP, APLC
Robert C. Hsu, Esq.
*Admitted Pro Hac Vice*
13300 Crossroads Parkway North, Suite 100
City of Industry, California 91746

*Counsel for Plaintiff*